Last case of the morning is in re Application of County Collector, 412-1071, for the appellant is Mark Morthland, and for the appellee is Michael Fleming. Mr. Morthland, you may proceed, sir. Thank you. Good morning. May I please have the floor? Good morning, counsel. Mr. Fleming, I would also like to take this opportunity to introduce Mr. Dennis Ballinger, who is present today on the floor. Your Honor, we have a very simple case before us. The facts, very basic. We have landowners, Janice and Sylvan Nergenau. They were served with a take notice on August 6, 2007, as is required under the Revenue Code. The husband, Sylvan, was served personally, and his wife, Janice, was served by substitute service. They were served at the actual farm, which is the subject matter of this proceeding, in a farm office, where Sylvan often did his work. On November 26, 2007, my client, through counsel, appeared in court and obtained an order directing issuance of a tax deed and an order of possession. On August 31, 2011, Mr. and Mrs. Nergenau filed a petition to vacate the tax deed under Section 2-1401 of the Illinois Code of Civil Procedure. That's three years and nine months after the order directing issuance of tax deed was entered. So, what are the two issues? The two issues, I believe, are, first, did the trial court err in denying the 619 motion to dismiss, which Mr. Ballinger filed? The second is, did the trial court err in granting the petition to vacate the tax deed? First, I'd like to take this opportunity to point out that with regard to the appellant's brief, he cites the case of NRA CRH for the proposition regarding subject matter jurisdiction serving notice on a juvenile delinquent's parents in a juvenile proceeding. The court found that the trial court did not have subject matter jurisdiction. That particular case has been specifically overturned by the Supreme Court of Illinois. That case that overturned NRA CRH is NRA MW, can be found at 232 Illinois, 2nd, 408, 905 Northeast, 2nd, 757, 328 Illinois Decisions, 868. So, we don't have that case to deal with. And that complicates matters. First, Section 1401 of the petition is to vacate. The statute itself says you've got to file it within two years of entry of the order from which you seek relief. This was filed three years and nine months after the order was entered. There was no evidence that Mr. Ballenger had engaged in any conduct that could be interpreted as fraudulent concealment of that order. So, the case right then and there should have been dismissed by the trial judge. But he elected not to do that. Instead, he went on and wanted to have an evidentiary hearing. First question, why did the legislature impose that two-year limitation in the 1401 statute? Well, I think we all know that they did that to give finality to judgment. But in addition, to give finality to tax fees. You can't have three, four, five years down the road a former owner coming in and petitioning to vacate an order that has been entered that long ago. Imagine how difficult it would be to ensure title in that situation. Legislature put that in there for a reason. And it was to bring finality to judgments and tax fee proceedings. Mr. Morthman? Yes. The appellee is suggesting that as far as a 214-01 petition, it doesn't necessarily have to be brought within two years if it's challenging a void order. And the Supreme Court case of Sarkissian v. Chicago Board of Education would seem to provide support for that argument. I would disagree with that, Your Honor. The three cases which I've cited in my brief, I've cited more than that, but three in particular, the Larson, the Wilder, and the Zedick cases say petitions filed almost four years after an order is entered do not qualify for petitions under Section 1401. Well, what about the argument on void orders? How does that work? This isn't a void order, I don't believe. Well, but that's dealing with the question of is it or isn't it. If the claim is that it's void because the court never had jurisdiction, why wouldn't that be something which is justiciable under 214-01? Well, jurisdiction, if you remember, in tax fee proceedings, they're different from other proceedings under the Civil Code. Tax fee proceedings, jurisdiction is obtained by the trial court when the treasurer goes in and makes application to sell those taxes. And there's a plethora of case law that says that that jurisdiction continues throughout the entire proceeding. I'm talking about the particular people involved, leaving aside the merits. Devon Bank is a classic example of, I think, what you're talking about. And Devon Bank went into great lengths to talk about void orders. But Devon Bank could have, and I respectfully suggest should have, been decided a one-issue case. Devon Bank was the owner of that property. Devon Bank did not get named, did not get served, and more particularly, under 22-45 subsection 4, they were not named in the publication notice. Because your 14-01 petition has to be tapered. It's limited to four or five grounds set out in 22-45. There are cases that I've cited in my brief that I will mention during this argument that say simply because an owner does not get served with a take notice, does not mean that that rises to the level of fraud sufficient to vacate an order. And that's what we have here. Now, the Larson, Wilder, and Zadig cases, again, all dealing under the tax code, specifically state, you know, these, filing a petition three and a half years, three years and four years after an order is entered, that's not... Well, what about the question of personal jurisdiction? The issue here appears to be a claim by the appellant, Janice, that a lack of personal jurisdiction over her, and as a result, the order affecting her property was void. If that, but just taking this in incremental fashion, isn't that something which is justiciable under 214-01? Not according to the case law, Janice. Why not? The case law says that, again, I will cite some of the cases. One in particular is Huff v. Johnson, cited in my brief. Huff, I'm sorry, Dr. Charles Johnson operated a dental office. His wife was the receptionist. She didn't pay the taxes, so they were sold to the taxes. Deputy Sheriff comes in, serves her as substitute service for the husband, and at their office, not their home. After the tax deeds recorded, that's challenged, there's no service on him. That court, like multiple other courts, has said, wait a minute. No, we're not going to litigate these issues which have already been decided by the trial judge. Once that trial judge entered the order directing issuance of tax deed, and 30 days have elapsed from the entry of that order, your only way to challenge it is by way of a 14-01 petition to vacate, and you're limited on what grounds for relief you may pursue a 14-01. Did the court address the claim that the order was void because of a lack of personal jurisdiction? That order did not, but subsequent cases have done. Well, but that seems to be our issue here. Why shouldn't, if it's true that there's a failure to obtain personal jurisdiction over Janice, why shouldn't she be able to litigate this on the 2-14-01 on the basis that her claim is this was a void order? Well, besides the fact that the statute is very specific on what you can and can't do. Well, I was in there for a moment with the statute, and maybe the Supreme Court shouldn't have gone down this road of the void orders being void and you can raise it at any time, but they have. So we have lots of 2-14-01 cases where this is not a statutory exception. This is an exception perhaps because of judicial gloss that if it's a void order, 2-14-01 statutory time frame limitations don't apply. So why doesn't that series of cases apply here? Well, first off, she was served by substitute service, by serving her husband. Well, but doesn't that address the question of is it justiciable at all? Isn't the court required to decide the personal jurisdiction question? Because if there's no personal jurisdiction, isn't the order void? In theory, it's void. But again, we have a situation where service was perfected on her, not only by substitute service, but in addition thereto, there was specific publication naming her. And if the court notes from the transcript, there was a second tax case at the same time involving Mr. and Mrs. Nergina's property. And the reverse happened. There was personal service on Mrs. Nergina, substitute service on Mr. by serving Mrs. They redeemed those taxes. They opted not to redeem these. And then they wait three years and nine months later to come after the owner of the property. To what extent is all of that in the record before us here? It is in the record. There was testimony in the hearing on the 1401 petition to vacate. As to what happened in that course and what she had been served and all the rest of this? I believe that, yes. My recollection is that it is in the record. Did you ask the court to take judicial notice of that record? Yes. I asked the court, I believe, to take judicial notice of that court file. Was publication in that other case also in the Waverly newspaper? I don't want to try and answer that because I don't remember. I don't know if it was redeemed prior to publication or not. I'm just not sure. And that was a question that was raised in the trial court. Why did you use the Waverly paper? Well, the reality of it is it's a private business. And it doesn't have a bottomless pit of money. And I believe the testimony was the Waverly paper was significantly cheaper, as is the Decatur Tribune is significantly cheaper than the Decatur Herald and Review. Most folks use the Decatur Tribune because they're reaching into their own pocket to pay for the publication. So if there's any question about that, that is also in the trial court record. The court chose not to grant the 619 motion. Instead, they wanted to hear evidence on the 1401 petition. As we've discussed, your 1401 is tailored and limited to the grounds set out in 2245. 2245's grounds are proof that the taxes were paid prior to the sale. We don't have that here. Proof that the property was exempt from taxation. We don't have that here. Proof 3, proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee. Or 4, which we don't have an issue here as far as 4, proof by person or party holding a recorded ownership or other recorded interest in the property that he or she was not named in the publication notice. Again, we can set that aside. So the only ground according to the statute and the case law interpreting the same that would have any application whatsoever is paragraph number 3 under 2245. What about the personal service issue? Well, good question. Under the Joyce Lynn Congula case, Smith v. DRG, Urban v. Lois, and Dahlke v. Hawthorne Lane Company, they were confronted with that in each case. There wasn't personal service. I don't believe in all four of them there wasn't even substitute service. How did the Supreme Court, I think, actually, I think all four of those were Supreme Court cases. In the Joyce Lynn Congula, that's Central National Bank v. Congula, the court said without proof of fraud, proof that an owner did not actually receive notice of tax sale, even if the statement had been made to the court that service was made, is not sufficient grounds to grant relief under the Civil Practice Act provisions relating to relief from judgment. So your position is it doesn't make any difference? Yeah, even though we did serve her. We're limited. The statute, the Illinois legislature says these are the four or five grounds, and actually there's a fifth ground regarding malfeasance of the county clerk. Here are your grounds. There are no others. Which cases were those? This Central National Bank v. Joyce Lynn Congula. Next is Smith v. DRG. The Supreme Court stated in that case, finding by the court that all notices have been given is conclusive and may not be relitigated by way of a Section 1401 petition unless there is an issue of fraud. So the court went on and said since no fraud has been shown, we are faced with the question of whether the trial court's prior finding that all notices required by law have been given can be attacked by a Section 72 petition. That court said no, can't do that. The next case is Urban v. Lewis. Well, one of the concerns I have, as I just mentioned, the court, I think since 1976, has gone down this road of void orders being subject to attack at any time. And I'm not sure whether or not what the Supreme Court said in Smith is still viable given the whole void order business. So that if, it appears to me, and this isn't my area of expertise, but it appears to me if the claim is the order was void because personal service was a requirement and it wasn't obtained, that's a justiciable matter, which can, even in a tax deed context, be raised and addressed and resolved by the court. Why isn't that essentially what happened here? Well, I don't believe this to be a void order by any stretch of the imagination. In the statute, it requires... Let me back up. I have to be more clear. Do you agree that if there are personal services required to obtain jurisdiction or at least an effort to achieve it in the court's judgment and then substitute service for jurisdiction to be obtained over Sylvia in this case? Wouldn't that be correct? Yeah, but the statute says they're supposed to attempt to make personal service the sheriff is, but that they can always rely upon certified mailings also. How can you rely on a certified mailing in its return? The certificate holder has to cause the sheriff as well as the circuit clerk to mail the certified mail return receipt requested to the last known and best address possible. And then their return is undeliverable. What do you do then? Just say, well, that's the way it goes. Yes. I mean, unless you've got time to which you can try and mail it to other addresses, and I know that most tax purchasers, including Mr. Ballinger, they will try and send them to multiple addresses. Well, doesn't the record here show things about the city directory, changes of address, and does an inquiry could have found an address for this person? But didn't need to. The sheriff served Janice Nurgenoff substitute service by serving her husband, just like Huff, at their office on the farm. Doesn't that have to be at the home for substitute service? No, I don't believe that. I don't believe that to be the case. It doesn't say personal residence? Well, you've got the Huff case that they were served at the doctor's office. The usual place of abode? Isn't that what the statute indicates? Yeah. Also, Mr. Laughlin, it seems to me that this is the case that you cited to the court, the other one that's dealing with Janice and Sylvan. Is it kind of a two-edged sword? You know, if they served them there, why is this an issue? Why is it certified mail comes back unknown? I mean, it would be easier to understand if they were dealing in Cook County with millions of people and all kinds of issues, especially if you've got something else going on, especially if you've got her served in this one, why is this even an issue? I don't mean to answer a question with a question, but we've been trained that way. What's the purpose of the notice statute? What's the reason? To give the owners and other interested persons notice of the fact that there is a tax deed received. Why would it even matter whether or not they were served in their residence, they were served in a coffee shop? And I had a trial judge once ask me why I didn't go down and try and sort of take notice of one of the owners in the coffee shop. He's there every morning at 10 o'clock. The purpose is to get notice to them. It doesn't matter, and it should not matter, where they received the notice. Okay. Well, your time is up. You'll have an opportunity to address this again. Thank you. Okay. Mr. Fleming? May it please the Court? Counsel? One of my clients, Mr. Nurgen, is here also in the courtroom. I'd like to introduce him. Okay. Your Honors, it seems to me this case is about what's fair and what is due process require. I think the record is clear that the owner, and certainly the Court was not against the manifest way of the evidence in finding that Janice Nurgen did not receive any notice of these proceedings at all. The certified mailings that went out, as one of your Honors has noted, were all sent back. That's clear from the record. And it's clear that that was because the two different addresses they sent them to were not even the right addresses. It's also clear that there was very little effort put forth in order to locate the Nurgens who lived, and at the time of the filing of this proceeding, had lived for at least a couple of years at an address in Jacksonville and Ivywood Lane, where they continued to live throughout the pendency of this case and the eventual filing of their petition, et cetera. They were easily findable in the phone book, the city directory, the Secretary of State's office. There's a bunch of evidence as to where their address could have been found. And they lived and worked in Jacksonville. It was not a difficult problem to locate them,  Why wasn't the substitute service on her husband sufficient for Janice? Because specifically, and I'll direct the court to the statute, which was in effect as of November 2007, Section 22-15 of the Tax Deed Act, specifically said that the same form of notice shall also be served upon all other owners and parties if upon diligent inquiry they can be found, et cetera, in the following manner. As to individuals, by leaving a copy of the notice to the person personally, or two, by leaving a copy at his or her usual place of residence with the person of the family of the age of 13 years or more and informing that person of its contents, the person making the service shall cause a copy of the notice to be sent by registered or certified mail, return receipt requested to that party at his or her usual place of residence. First of all, there was no service on any family member, Mr. Nergena or otherwise, at the Nergena's usual place of residence. He was served out on the farm. The statute says it's to be at the usual place of residence. So you're elevating form over substance here, aren't you, Counsel? The whole idea about, gee, I didn't know anything about this, is just the technical argument of, gee, if you'd served me in my home and sent out on the farm, I guess we'd have jurisdiction over it. I don't think so. In fact, I have a totally separate case now where I have a client whose husband was served with foreclosure papers at their home and was in substitute service on her, and he didn't tell her about it, hid the papers away, and subsequently, during divorce proceedings, after he'd moved out of the house, she happened to run across the papers almost too late to do anything about it. But the problem was that... Is that the claim here? Pardon? Is that the claim here? He hid it from her? Well, the claim is that he didn't tell her, to the extent that Mr. Nergena did get served at the farm, he didn't tell her about it. She didn't know. And what I would submit to the court is that the best service is clearly personal service. If you can't get that, then to the extent the statute allows substitute service, that's... You could easily have the situation I just described, but the law allows, if you do it correctly, the law allows that substitute service to be sufficient. I would suggest to the court that, because it's not personal service, because there is no actual service of the notice on the party in question, that if there's an effort to be made by substitute service, it's got to comply with the statute. And the statute says it's okay to do it at the residence, but not elsewhere, even though we might see there's, in some respects, there's no practical difference. I think it's got to be... What's the property that's the subject of all this? What is the property? Yes. It's about an 80-acre piece of farmland, primarily farmland, I think there's some non-tillable land, in the northwest corner of the county. So the issue arises because your clients didn't pay their taxes? Right. Now, you see, I'm not sure where the sympathy should lie in this case, because next week I pay my second installment of my property taxes, and I suspect my colleagues are all doing it, too. Had your clients paid their taxes, none of this would come up. So we have Mr. Ballingers in the business of looking for people who aren't paying their taxes, and then that's the system that the legislature has established. So taxes will be paid, and the governments will get the money that the taxes are supposed to represent. And there's a procedure whereby the people who don't pay taxes can come around and try to redeem their property. Isn't that how it works? That is correct. Okay. So what we have in a situation like this is, if we accept the argument being made here, what about Mr. Morthman's point that, you know, when you buy these tax deeds, shouldn't you have marketable deeds and property? And at what point, after all, if we accept this argument, you happen to have brought it now, but you could have brought it six years later and said, hey, set aside this tax deed because, you know, Janice didn't get served. My husband was served down on the farm and not at home, and the deed you thought you had, Mr. Ballinger, and you're going to sell this property or use it in some fashion, forget about it. Any problem with that? Oh, yeah. And I think the easy case has got to be decided on its own. But the facts you have here, and if these facts obtained over a 10-year period, I think the same arguments would apply, is that first of all, based on the court's findings, there was no notice to Janice Nergena. She didn't know, regardless of what her husband may have known, she didn't know about the proceedings. She did know in the other proceeding that Mr. Morthman referred to, apparently. I don't think there's that much reference in the record to it, but it does appear that she did have some notice in the other. What property was that? I don't even recall what it was. It's a molar property, farmland in Jackson and Morgan County? I don't believe it was their home. I think it was another piece of property, but I don't recall what it was. And again, there was not that much reference to it in the record that I recall seeing. But she had no notice, and in addition, although the order allowed Mr. Ballinger to take immediate possession of the property, he did absolutely nothing. For the next three years, the Nergenas continued farming this property. They continued paying taxes on the property. There was no effort by Mr. Ballinger or anyone operating through him to exercise any element of protection. Does the record show why they didn't pay taxes for the year at issue? It does not. In going through the record, I did notice a couple of things that are on the record. Number one, that the Nergenas had been living at the property up to 2003, and they moved out in 2003. And of course, 2003 taxes came due the following spring. And also that they just acquired title to the property from Mr. Nergena's parents through a trust or estate in 2003. This is 80 acres? Yes. What's the tax that was paid here? I believe, if I recall correctly, it was $368. I'm not certain of that, but I believe I saw that in the record. So that's what they paid in subsequent years? Yes, although obviously it could have been adjusted as the multiplier may have changed and that type of thing. Mr. Fleming, following up on what Justice Steigman was talking with you about, I'm curious about how far down the road you can take this and to who this might impact on a circumstance, say, where Mr. Ballinger then obtains a tax deed, sells to a buyer in due course. What happens in that circumstance where your client then seeks to set aside a tax deed for the property that now has been sold to a buyer in due course? Quite honestly, I'm not certain, Your Honor, but I believe there is some case law that indicates that that changes the picture, that even assuming that at this point in time the deed can be vacated or can be treated as void, that if there is a sale to a bona fide purchaser at that point, that may effectively deprive the original property owners of their ability to do anything about it. But you're not sure? I'm not positive. I believe I saw that. I mean, it's obviously not an immediate issue in the case, but I believe I saw some reference to that in one of the cases. Would that affect the marketability of titles? It could, certainly, but I think there are obviously a lot of things that can affect marketability and purchasers are obligated to make reasonable efforts to determine the background through title searches, through title insurance. The title search is I got this title here from the county treasurer that was issued to Mr. Ballinger. Shouldn't I be able to rely on that? Yes, but in this case where there had been no sale, Your Honor, if we work with the premise that there's no notice to Mrs. Nurgen as a property owner and then there's a representation in the application, specifically in the application and in the affidavit supporting the application, that all the proper notices were given according to statute, which is clearly not true, that... So what did they fail to do here that they should have done that would have avoided this whole issue? What should Mr. Ballinger have done here? I think what he should have done, first of all, is he should not have relied on a purported substitute service, which clearly was not valid. By the way, I don't think there's anything in the record. The court is aware that half of substitute service is sending a copy of the paperwork by certified mail to the party to be served who was not actually served at the place of residence. That wasn't done or even attempted to be done as far as the record shows. So there's personal service outside the residence on a family member and then no effort to... Who was it that served Mr. Nugent on the farm? Who was it? Deputy Langdon, I believe was his name. He testified at trial and essentially didn't really recall it other than what the record... But so he served, he found Sylvan Nurgunath, is that how it's spelled? Yes. He found him and then he left the service for Janice with him out on the farm? Yes, that's correct. And then... In fact, I think he specifically testified that he didn't send anything beyond that and I don't believe there's anything in the record to show that anyone else sent the appropriate follow-up. What's the statutory procedure on who should follow up? Is it the party or is it the deputy or the sheriff's department supposed to then mail out the... Under the statute it is the deputy. Supposed to mail to the... It specifically says, Your Honor, and this is again the 2007 version of the statute, the person making the service shall cause a copy of the notice to be sent by registered or certified mail returned or received requested to that party at his or her usual place of residence. And I believe that essentially paraphrases Section 203, 2203 of the Civil Code, which is the general... So that's the certified mail that was sent in this case and returned? No, that one was not sent. The ones that were returned were the ones that were sent out by the clerk's office. And the clerk sent... Mr. Ballinger had suggested two different addresses to the clerk and the clerk sent out four notices, one to each party at each of the two addresses. All four of them came back. So had Janice been out on the farm when her husband was there, that would be the end of this case? If she were out there and both of them had been personally served, then the argument that we're making today, or even in the trial court, I'm sure wouldn't have even gotten past the trial court, Your Honor. They both would have had the personal notice. So your claim is these are factual questions on sufficiency of service? Yes. And if the service isn't sufficient, then the order is void? That's our position, Your Honor. I know there is some case law that suggests that in a tax deed proceeding that you don't have to have personal jurisdiction as such. I think there is enough case law, and we've cited it, that effectively holds that the principle of basic due process notice and opportunity to be heard still requires that appropriate notice be given. It may not be quite as strict as the service of summons, but it's pretty doggone close to that. And there are cases that hold that the failure to provide notice under the provisions of the statute here for the tax deeds is fatal to the case, either at the time that the request for a tax deed is made or in a 214-01 petition afterwards to set that aside. So you think Mr. Morthen talked about the statute earlier, but you think that this is a due process question according to the Supreme Court Bill 9, this personal jurisdiction matter which trumps the statutory standards? I believe so, Your Honor. I believe so. I think it's a matter of really basic fairness in the form of due process in our system. You may be right about that, but what's troubling to me here is you're arguing basic fairness, and under the circumstances of this case, I'm left with the impression, and I may not be fair, that Janice is gaming the system here, that she knew all about this all along, and she's just now coming up here and saying, Mr. Fleming, find the basis to argue that this should not be permitted. Your Honor, first of all, I don't believe that's the case. I think if she had known about it any sooner, she would have done something about it a lot sooner. Secondly, there's nothing in the record that would support that other than sheer speculation. Well, what happened three years after the fact that caused her to take this action? According to the testimony, Your Honor, she went to pay, or she went to investigate the fact that she had not received a tax bill for the property that year. They had received them apparently in previous years, that year in the 2011 summer. She did not get a tax bill. She went to the assessor's office or treasurer's office somewhere and then discovered that the tax deed had been issued, and within roughly six weeks had filed the petition to set aside the tax deed. So she acted promptly upon first learning of what had happened. So Mr. Belanger hadn't done anything? He hadn't done a single thing. But if he had taken that tax deed and used it to sell to somebody, we might have a different case? It certainly created a lot more headaches, and as I said, I think I saw a case that suggested that, assuming that the purchaser was bona fide and had no knowledge of any of this. And there could be an argument made that the purchaser should search the record and even look beyond the issuance of the tax deed to make sure the proceedings were regular. So if I want to buy this property pursuant to this tax deed from Mr. Belanger, I have to go back and check and see whether there was personal service or the service was adequate? Again, we don't have that situation, and I don't want to… But what doors are we opening by affirming what the trial court did here, counsel? I think the only door you're looking at is the door between Mr. Belanger and the Nergenists at this point. The fact is that, according to the trial court's findings, and according to the evidence, that the tax deed was obtained on the basis of false representations, intentional or otherwise, that proper notice had been given. The case law says strict compliance with the notice provisions is required. I think it's very clear, and this is the case in one of the cases we cited, I believe it was DS, that Judge Mitchell was effectively saying, if I had known when Mr. Belanger came to me and said, I'd like my tax deed in November 2007, if I had known at that time what I now know about the lack of notice and all that type of thing, I wouldn't have authorized the issuance of the deed. And the reason he didn't know that is because, and certainly on one hand, Mr. Nergena, who did have notice, hadn't done anything, but Mrs. Nergena, who's also an owner of the property, who didn't have any notice, didn't have an opportunity to object, and the representations made to the court to have the order entered were false and misleading to the court. As a matter of curiosity, when somebody takes a tax deed, do they then begin to pay the taxes on that property? I believe they can. I don't know that that always happens in every case, and the evidence in this case was that Mrs. Nergena said that they had paid the taxes subsequent to the issuance of the deed, and it was only when the 2010 taxes would have come due in 2011 that they didn't get the tax bill that she started asking questions. You referenced this a couple of times to your belief that the cases out there which would suggest that a bona fide purchaser would be able to defeat the claim of the landowner that the tax deed was void because of insufficient service. Is that case in your brief someplace? I don't know that it is off the top of my head, Your Honor. Again, I apologize because that was not an issue in the case. It's not something I was looking for. I just have a recollection that I saw something about that, and I'm not sure it was in any of the cases I cited. In fact, I think it was not. I think it was something that I saw while going through cases. In fact, I remember thinking that it's probably good that that hadn't happened in this case. Well, so let's take this situation. Mr. Ballinger is sitting on this tax deed, and before Janice Nergena discovers she isn't getting a tax bill, he sells the property. Could he do that pursuant to the tax deed? He could certainly make that effort, and as I've said before, that throws a new wrinkle in the case. And I don't think you have to say, if you want to say that in that case the new purchaser should be able to take that title free and clear, that doesn't automatically mandate the conclusion that therefore the tax deed is inviolable and cannot be changed at this point because, again, we don't have that. We don't have the new quote-unquote purchaser. This is still between Mr. Ballinger and the Nergenas, and Mr. Ballinger was the one who presented the wrong information to the court. Okay. Well, your time's up, counsel. Thank you. Thank you. Mr. Martha, any rebuttal, sir? I do, if I may, Your Honor. Okay. Thank you. Just a couple of observations, if I may. First, Justice Steinman, you point out something, an argument that I've wanted to make for many, many years in this business. We have to pay real estate taxes every year to installments at the same time every year, and yet the Nergenas in this case, they missed two parcels of farmland. That other parcel that they did redeem was, in fact, a parcel of farmland, but they didn't redeem the settlement. The court mentions the bona fide purchaser for value. Devon Bank, that particular case, again, Devon Bank was the owner. They had a deed recorded that showed they owned it. They were not named in the publication notice. Some title searcher didn't pick up the fact that they had an ownership interest in the property. The property was sold to the bona fide purchaser. The bona fide purchaser jumps into that lawsuit. Well, I think that was the first district case ultimately said that bona fide purchaser does not trump. Does not what? Does not trump the Devon Bank, and Devon Bank ended up walking away the victor in that case. Do you have a cite for that? It's actually in Mr. Fleming's brief. The Devon Bank case? The Devon Bank citation, yes. I appear, I think it was me, that appeared in front of Judge Mitchell when the order directing issuance was signed. And had he asked me, I would have represented to him, yes, all the notices had been served according to the statute. Because based upon the information that I had, personal service on Sylvan Nergena, substitute service on Janice Nergena, I don't know of a case. You don't know what? I don't know of a case where the court, in dealing with the revenue code, says that substitute service must be at their place of residence. They were served at their former place of residence, which was now converted into a farmhouse, or a farm office, because it was located right there where all their farm ground was. So you would have thought that was adequate? We're going to start splitting hairs and saying, no, it was a former residence. Well, it's just that we're going to talk to them across the street. They're splitting the hairs, aren't they? I mean, that's what the statute says. I'm a firm believer in following exactly what the statute says, Judge. And I'll be back here in a couple of months on another tax case. Can't wait. I hope I didn't upset your lunch. No, no, that's all right. And the last thing, if I've got a few more minutes, the last thing is the number of notices that go out. You've got the treasurer. Before the treasurer sells the taxes, sends out a notice. Then the treasurer publishes it in the paper. Then the treasurer sells the taxes. Then the certificate holder has to cause the county clerk to mail out a take notice certified mail return receipt request, and then he has to cause the sheriff to accept personal service or certified mail. What does the record show about those things happening in this case? Go back to the original order directing issuance of tax due to the application and affidavit in support. I'm not sure that there's any specific reference. I don't know of a record where there's specific reference to whether the county clerk take notice was served,  I want to ask that same question. When you buy a tax deed and you don't do anything immediately, do you pay the real estate tax? Yes, and I'm sorry, I meant to answer that for you. When I go in, after I get an order of directing issuance of tax due, there's a difference between an order of directing issuance and actually getting the county clerk to sign the deed. Before that county clerk will sign the deed, I have to pay all prior year's taxes. I have to make sure that those are paid. Once I record the deed, I'm on the hook for the taxes. But I'm also on the hook for those taxes between the year that I get my certificate and the year that I get my tax deed issued by the county clerk. And then if there's a subsequent redemption, you're reimbursed those taxes plus interest, right? That's correct. That's the redemption process? Exactly, yes. And is Mr. Fleming correct that we're talking about less than $400 worth of taxes here? To be honest with you, Judge, and I'm answering this honestly, I have no idea. And I don't mean any disrespect by this, but whether it was a farm ground, 80 acre or 800 acre farm ground, or a $100 shack, what Mr. Ballinger paid for that certificate shouldn't play any role in how it's … Okay, thank you, counsel.